**UNITED STATES of America**

v.

**Joseph John CHILLI, Jr., Joseph John Chilli, III, Joseph Macaluso, Philip Cicciari, Joseph Giddio, Alan Taglianetti, James Munson, Robert Gangi, and Louis Monaco, Defendants.**

**No. 89 Cr. 331 (RPP).**

United States District Court, S.D. New York.

Feb. 4, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. by Daniel A. Nardello, Asst. U.S. Atty., New York City, for U.S.

Law Office of Gerald L. Shargel by Gerald L. Shargel, New York City, for defendant Joseph John Chilli, Jr.

Law Offices of Susan G. James & Jeffrey C. Duffey by Susan G. James, Montgomery, Ala., for defendant Joseph Macaluso.

Alan Taglianetti, pro se.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendants Joseph John Chilli, Jr., Joseph Macaluso, and Alan Taglianetti each move pursuant to Rule 35 of the Federal Rules of Criminal Procedure ("Rule 35") for a reduction in their respective sentences imposed by this Court on July 2, 1990. For the reasons set forth below, the motion of defendant Chilli is denied, the motion of defendant Macaluso is granted in part, and the motion of defendant Taglianetti is denied.

## BACKGROUND

In 1989, Joseph John Chilli, Jr., Joseph Macaluso, Alan Taglianetti, and other defendants were charged in an eighteen count indictment with, among other things, Racketeering Conspiracy in violation of 18 U.S.C. § 1961 and Engaging in a Racketeering Enterprise in violation of 18 U.S.C. § 1962. The object of the conspiracy and the conduct engaged in by the enterprise as charged by the indictment involved the following activities: conduct of an illegal gambling business, transmission of gambling information, interstate transportation of wagering paraphernalia, financing extortionate extensions of credit, conspiracy to make extortionate extensions of credit, conspiracy to collect extortionate extensions of credit, wire fraud in connection with counterfeit credit cards, wire fraud in connection with stolen checks, wire fraud in connection with stolen securities, narcotics conspiracy, laundering of monetary instruments, currency transaction violations, and conspiracy to murder Anthony O'Connor, Jr. and Anthony Bonaventura. Several of the defendants were also charged with unlawful gun possession.

On December 19, 1989, eight of the nine defendants, the ninth being seriously ill, entered pleas to count two of the indictment, the substantive RICO count, pursuant to a plea agreement reached with the United States Attorney's Office. The plea agreement provided that the defendants be permitted to allocute to conduct that took place prior to the effective date of the United States Sentencing Guidelines ("the Guidelines") of November 1, 1987.[1] It was understood by all parties that the defendants would therefore not be sentenced under the Guidelines, but rather would be sentenced pursuant to the law as it existed prior to November 1, 1987. The pre-Guidelines law provided for a maximum sentence of 20 years, did not require the Court to impose sentence of any minimum term, and permitted the release of a defendant to parole after serving one third of the Court's sentence.

On July 2, 1990, the Court sentenced Joseph John Chilli, Jr. to fifteen years in prison, Joseph Macaluso to twelve years in prison, and Alan Taglianetti to six years in prison. With the exception of Joseph John Chilli, III, who also received a fifteen year

---

**1.** Other terms of the plea agreement are not relevant to this opinion.

sentence, the other defendants were sentenced to somewhat lesser terms.

On January 2, 1991, the Court granted a Rule 35 motion brought on behalf of defendant Joseph Giddio and reduced his sentence from five to four years.

Thereafter, on January 11, 1991, the Court heard a Rule 35 motion brought by counsel for Joseph John Chilli, Jr. on papers filed on October 25, 1990. The motion was based on the argument that the sentence imposed by this Court was greater than the sentence which was required by the Guidelines for the acts to which the defendant had allocuted. The Government opposed the motion, taking the position that it would never have entered into the plea agreement, but would have proceeded to trial, had it understood that the maximum to which the defendant could have been sentenced would have been a sentence as calculated under the Guidelines for acts to which the defendant allocuted. The Court agrees that the Government would not have entered into the plea agreement under such circumstances.

Counsel for defendant Chilli acknowledged that it was he who had suggested a non-Guidelines plea to the Government. He argued, however, that the sentence was unfair because if the defendant had gone to trial and been convicted of the charge to which he had allocuted, he would have secured, in effect, a lesser sentence due to the policy of the Bureau of Prisons not to consider organized crime figures eligible for release until they have served two-thirds of their sentences. Thus, he argued that defendant Chilli found himself in a worse position under the plea agreement than if he had gone to trial.

The Court indicated that it did not believe that defendant Chilli necessarily found himself in a worse position than if he had gone to trial, but that it would reconsider the sentence in light of the alternative of going to trial faced by the defendant at the time of his plea. All counsel agreed that had the case gone to trial and

had the defendant been convicted, he would have been sentenced in accordance with the Sentencing Reform Act of 1984,[2] because allegations in the indictment straddled the effective date of the Guidelines promulgated under that Act, November 1, 1987. Over the Government's objection to any further reconsideration of the sentence, the Court ordered the United States Probation Office to furnish a calculation of the Guideline "points" which Chilli would have faced had he been convicted at trial of all counts with which he was charged in the indictment. The Court also gave the Government time to file a brief in opposition to the argument presented by Chilli's counsel. The Court indicated that it would reconsider the sentences of any other defendants on the same basis.

Thereafter, counsel for Macaluso and Taglianetti made Rule 35 motions based on similar grounds. A supplemental memorandum was received from defendant Chilli on October 23, 1991. An addendum to the motion of defendant Taglianetti was received on October 2, 1991, and a letter from defendant Macaluso was received on January 13, 1992. A letter brief from the Government as to defendants Chilli and Macaluso was received on December 17, 1991, and a similar letter as to Defendant Taglianetti was received on January 21, 1992.

## DISCUSSION

### A. Joseph John Chilli, Jr.

■ The Probation Office calculated[3] that if defendant Chilli had been convicted of all counts after trial, he would have faced a sentence of 121 to 151 months under the Guidelines which were effective on the date of the plea. The facts reported in the Probation Office Report on this defendant make clear that he had determined to live his life as a member of an organized crime group and for many years had been an important capo in organized crime. Accordingly, after a trial at which he had

---

**2.** Chapter II of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473 (1984).

**3.** No counsel has taken the position that the Guidelines point count calculations of the Probation Office are in error.

been found guilty of all counts, the Court would have, at a minimum, sentenced defendant Chilli to the maximum sentence under the Guidelines of 151 months. Under the Guidelines, defendant Chilli would not have been eligible for parole and would have had to serve 128 months before his release from custody, well over the 120 months at which he will be eligible for parole under his present sentence. Thus, defendant Chilli has not been placed in a worse position than if he had gone to trial, but in a better one.

If, prior to trial, defendant Chilli had allocuted to all counts in which he was charged and been determined to have demonstrated "a recognition and affirmative acceptance of personal responsibility for his criminal conduct," [4] however, his Guidelines sentence range would have been 97 to 121 months. Such a sentence range would have permitted his release from custody at a time earlier than his present parole date. These computations, however, overlook the fact that in light of Chilli's long-standing and dominant role in the organized crime group charged in this indictment, the Court would have departed upwards from the Guidelines by at least two points, making his Guidelines sentence range at least 121 to 151 months. In the Court's view, Chilli would have considered such a departure as likely. Furthermore, for the plea entered into to have constituted acceptance of responsibility under the Guidelines, it would have required some acknowledgment by Chilli of his leadership of and control over the other persons charged, something to which the defendant did not allocute at the time of his plea. The Court is not convinced that Chilli would have clearly "demonstrated a recognition and affirmative acceptance of personal responsibility" for his RICO conduct, and concludes that Chilli's sentence is not inconsistent with, or greater than, what the Court would have ordered in a sentence under the Guidelines. Accordingly, Chilli's Rule 35 motion is denied.

4. *See* United States Sentencing Commission,

### B. Joseph Macaluso

■ As calculated by the Probation Office, the Guidelines would have required defendant Macaluso, if he had been convicted of all counts upon which he was charged, to have been imprisoned for 51 to 63 months. Upon a plea of guilty, his Guidelines sentence range would have been 41 to 51 months, provided he qualified for the acceptance of responsibility deduction of 2 points. Macaluso was sentenced to 12 years in prison based on his guilty pleas to (1) management of a very large gambling operation, and (2) the extension of credit with knowledge that collection could be effected by threats of violence. The gambling operation and its collection of credit mechanism were headed by known organized crime figures who were known to have the ability to see that such threats were carried out. Macaluso was a top manager of that operation and supervised a number of employees.

The Court is not convinced that Macaluso would have "clearly demonstrated a recognition and affirmative acceptance of personal responsibility" for his RICO conduct, and thus have been eligible for a deduction of two points under the Guidelines. Since the facts in the Probation Office Report indicate that Macaluso had made the decision to live his life as a member of this organized crime group, the Court would in all probability have departed upwards from the Guidelines. The Court, however, would not have utilized the Guideline steps to depart upwards to the extent that the present sentence would require. Accordingly, defendant Macaluso's motion is granted in part. On reconsideration, the sentence is reduced to 96 months. If treated as an organized crime figure, as the Bureau of Prisons is likely to treat him, he should be releasable on parole after serving 64 months. This is about the same period of time as his release pursuant to a maximum sentence under the Guidelines of 63 months had the Court departed upwards by two points and determined not to award two points for acceptance of responsibility.

*Guidelines Manual,* § 3E1.1.

C. Alan Taglianetti

 As calculated by the Probation Office, the Guidelines would have required that defendant Taglianetti be imprisoned for 46 to 57 months after being found guilty at trial of the six counts with which he was charged. If, under the Guidelines, he had pleaded guilty to all counts and received credit for acceptance of responsibility, his Guidelines sentence range would have been 37 to 46 months. As a person who decided to live his life as a member of an organized crime group, he too would have received a sentence at the top of the Guidelines range. Since his role in the group was less substantial than Chilli's or Macaluso's, the Court would probably not have departed upwards. The Court is not convinced that Taglianetti would have "clearly demonstrated a recognition and affirmative acceptance of personal responsibility" for all his RICO conduct as charged and thus been entitled to the two point deduction. Accordingly, it does not conclude it would have deducted two points. Under a Guidelines sentence on all counts with which he had been charged, a 57 month sentence would have been imposed, and Taglianetti would have been eligible for release in 48.45 months. Thus, if he had been sentenced under the Guidelines as guilty of all counts, he would have served a slightly longer period than under the Court's actual sentence of six years under which, if he is treated by the Bureau of Prisons as an organized crime figure, he will be eligible for release on parole after serving 48 months. Accordingly, his motion is denied.

IT IS SO ORDERED.